David S. Ratner, Esq.
Ratner Molineaux, LLP
david@ratnermolineaux.com
1990 N. California Blvd,
Suite 20
Walnut Creek, CA 94596
Telephone: (925) 239-0899
Facsimile: (925) 891-3818
*Attorney for Plaintiff and the Class*

[Additional counsel appearing on signature page]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERAMY GALSTER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOORDASH, INC., a Delaware corporation,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Jeramy Galster ("Plaintiff" or "Galster") brings this Class Action Complaint and Demand for Jury Trial against Defendant DoorDash, Inc. ("Defendant" or "DoorDash") to stop Defendant from violating the Telephone Consumer Protection Act by continuing to place pre-recorded telephone calls to consumers who expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Galster, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.  Plaintiff Jeramy Galster is a natural person and resident of Anchorage, Alaska.

2.     Defendant DoorDash is a Delaware corporation headquartered in San Francisco, California. Defendant DoorDash conducts business throughout the United States.

**JURISDICTION AND VENUE**

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is headquartered in this District and the wrongful conduct giving rise to this case emanated from this District.

**INTRODUCTION**

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

CLASS ACTION COMPLAINT
-2-

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. DoorDash provides a service that allows consumers to place food orders from restaurants and to have those orders delivered by contracted DoorDash drivers who are known as Dashers.[3]

15. As per the Plaintiff's experience, DoorDash notifies its restaurants and the Dasher using pre-recorded voice messages when a consumer makes a change to an order.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.doordash.com/dasher/signup/?utm_source=dx_signup_midtile_cx_home

16. DoorDash also places pre-recorded voice messages to restaurants regarding consumer orders.

17. Unfortunately, DoorDash places pre-recorded voice message calls to consumers who do not represent a DoorDash affiliated establishment and who are not registered as Dashers.

18. In Plaintiff's case, Plaintiff received over 40 pre-recorded calls from DoorDash, to his cell phone, despite the fact that Plaintiff has never registered a restaurant with DoorDash and has never worked as a Dasher.

19. To make matters worse, Plaintiff received pre-recorded calls before 5:00 AM and continued to receive calls after opting-out at least 3 times from receiving these pre-recorded calls.

20. There are numerous complaints posted online about consumers receiving multiple unwanted pre-recorded calls from DoorDash including:

- "left several pre recorded messages. something about door dash"[4]
- "called multiple times"[5]
- "Numerous calls received on a regular basis."[6]
- "calls three times continuously didn't pick, gets automated voice message which just says, press 3 something something…"[7] (exactly as per Plaintiff's experience)
- "Calls my restaurant 20 to 30 times a day and no one is ever on the line."[8]
- "Door Dash keeps calling… I don't use them at all!"[9]
- "this number keeps calling me everyday"[10]

---

[4] https://www.shouldianswer.com/phone-number/6504504940
[5] Id.
[6] https://findwhocallsyou.com/6504504940?CallerInfo
[7] Id.
[8] Id.
[9] https://directory.youmail.com/directory/phone/6504504940
[10] https://whocallsme.com/Phone-Number.aspx/6504504940

CLASS ACTION COMPLAINT
-4-

- "I just spoke to *another* representative from Doordash who is following up on the calls to my number. She was able to find the error at the restaurant in question and take my phone number out…"[11]

21. In response to these calls, Plaintiff Galster files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF GALSTER'S ALLEGATIONS

22. Plaintiff Galster acquired his cell phone number in early October, 2020.

23. Plaintiff Galster uses his cell phone for personal use only. It is not associated with a business.

24. At the time Plaintiff Galster started receiving calls from DoorDash, he had never provided DoorDash with his new cell phone number.

25. On October 7, 2020, Plaintiff received 3 unwanted calls from Defendant from the phone number: 650-450-4940 at 4:54 AM, 4:56 AM and again at 4:58 AM.

26. These calls disturbed Plaintiff and woke him from his sleep.

27. Plaintiff called 650-450-4940 at 5:20 AM to find out who was calling him.

28. According to the automated system Plaintiff heard, the calls were from DoorDash.

29. Plaintiff then blocked phone number 650-450-4940.

30. Unfortunately, as Plaintiff soon learned, despite blocking the phone number, a new call would still cause his phone to make a noise and vibrate.

31. Defendant continued to place calls to Plaintiff's cell phone on October 8, 2020 at 6:00 AM, 6:02 AM and again at 6:04 AM using phone number 650-450-4940.

32. On October 11, 2020 at 9:22 AM, Plaintiff received another call from Defendant using phone number 650-450-4940.

---

[11] https://lookup.robokiller.com/p/650-450-4940

33. This call was blocked, but Defendant left a 2-second pre-recorded voicemail of a message that only played the last portion of the message.

34. The partial pre-recorded message said something about pressing '3' as if the call had been answered.

35. Plaintiff heard this same partial pr-recorded message in every voicemail that Defendant left for him on his cell phone voicemail.

36. Plaintiff got another call on October 11, 2020 from Defendant using phone number 650-450-4940 to his cell phone, this time at 9:24 AM.

37. Again, a 2-second pre-recorded voicemail was left.

38. Plaintiff received a third call from Defendant on October 11, 2020, this time at 9:26 AM using phone number 650-450-4940.

39. A 3-second pre-recorded voicemail was left.

40. Plaintiff called 650-450-4940 at 9:26 AM on October 11, 2020.

41. Plaintiff spoke with an agent and told the agent that he wanted the calls stopped as they were being placed in error.

42. Despite this clear stop request, Plaintiff received additional calls on October 12, 2020 from Defendant using phone number 650-450-4940 at 7:27 AM and 7:29 AM.

43. For both of these calls, a pre-recorded voicemail was left.

44. Plaintiff called 650-450-4940 on October 12, 2020 at 9:18 AM.

45. Plaintiff spoke to an agent and requested that the calls stop, again explaining that they were being made in error.

46. Despite his second stop request, the calls from Defendant still continued using phone number 650-450-4940 on October 21, 2020 at 12:03 PM, 12:05 PM, 12:07 PM, 12:14 PM and 12:16 PM.

47. For each of these calls, a pre-recorded voicemail was left.

48. Plaintiff called 650-450-4940 for the third time on October 21, 2020.

49. Yet again, Plaintiff spoke with an agent and asked for the calls to be stopped.

50. Plaintiff told the agent that he had already made requests for the calls to stop but that they had continued.

51. The agent assured Plaintiff that the calls would stop.

52. On October 23, 2020, Plaintiff received additional calls from Defendant using phone number 650-450-4940 to his cell phone at 4:55 AM, 4:57 AM, 5:00 AM and 11:15 AM.

53. Pre-recorded voicemails were left for each of these calls.

54. Plaintiff unblocked 650-450-4940 at 11:15 AM on October 23, 2020.

55. At 11:17 AM on October 23, 2020, Plaintiff received a pre-recorded call from Defendant using phone number 650-450-4940.

56. Plaintiff answered this call and heard a message about what Plaintiff understood to be an order change for a restaurant.

57. On October 24, 2020 at 6:31 AM, Plaintiff received another call from Defendant using phone number 650-450-4940.

58. Another partial voicemail message was left when Plaintiff missed answering this call.

59. Plaintiff then blocked 650-450-4940 once more.

60. Plaintiff received the following additional calls from Defendant using 650-450-4940 to his cell phone, all of which came with a partial pre-recorded voicemail message:

- October 24, 2020 @ 6:33 AM – Blocked
- October 24, 2020 @ 6:36 AM – Blocked
- October 24, 2020 @ 6:46 AM – Blocked
- October 24, 2020 @ 6:49 AM – Blocked
- October 24, 2020 @ 6:51 AM – Blocked
- October 25, 2020 @ 6:02 AM - Blocked
- October 25, 2020 @ 6:04 AM - Blocked
- October 25, 2020 @ 6:07 AM - Blocked
- October 29, 2020 @ 5:05 AM - Blocked
- October 29, 2020 @ 5:08 AM - Blocked
- October 29, 2020 @ 5:10 AM - Blocked

61. Plaintiff called 650-450-4940 on October 29, 2020 at 5:48 AM, as the earlier phone calls had disturbed his sleep, hoping to make yet another stop call request.

62. Plaintiff was unable to reach a live agent.

63. Plaintiff then received another call from Defendant using phone number 650-450-4940 on October 29, 2020 at 6:15 AM.

64. Another partial pre-recorded voicemail was left.

65. Plaintiff unblocked 650-450-4940 again shortly after receiving the aforementioned call.

66. Plaintiff received another pre-recorded call from Defendant on October 29, 2020 at 6:28 AM.

67. Plaintiff answered this call and heard a message about what Plaintiff understood to be an order change for a restaurant.

68. No option was provided for Plaintiff to speak with an agent.

69. Plaintiff hung-up the call and blocked 650-450-4940 once more.

70. Plaintiff received the following additional calls from Defendant using 650-450-4940 to his cell phone, all of which came with a partial pre-recorded voicemail message:

- October 30, 2020 @ 6:02 AM – Blocked
- October 31, 2020 @ 5:19 AM – Blocked
- October 31, 2020 @ 5:21 AM – Blocked
- October 31, 2020 @ 5:23 AM – Blocked
- November 7, 2020 @ 5:24 AM – Blocked
- November 7, 2020 @ 5:27 AM – Blocked

71. The unauthorized pre-recorded telephone calls that Plaintiff received from DoorDash, as alleged herein, have harmed Plaintiff Galster in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

72. The unwanted calls interrupted Plaintiff's sleep numerous times and wasted Plaintiff's time as Plaintiff had to call multiple times to ask for the calls to be stopped, and Plaintiff had to listen to and delete many unwanted pre-recorded voicemails that Defendant had left for him on his cell phone voicemail.

73. Seeking redress for these injuries, Plaintiff Galster, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits calls to a residential phone number after the consumer has opted-out of receiving calls.

## CLASS ALLEGATIONS

74. Plaintiff Galster brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Pre-recorded Stop Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called, (2) for substantially the same reason Defendant called Plaintiff, (3) using a pre-recorded message, (4) after they told Defendant to stop calling.

75. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Galster anticipates the need to amend the Class definitions following appropriate discovery.

76. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

77. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant DoorDash placed prerecorded calls to consumers after being instructed to stop calling;

(c) whether the Defendant engaged in prerecorded calls without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether Defendant's conduct constitutes a violation of the TCPA;

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

78. **Adequate Representation**: Plaintiff Galster will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Galster has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Galster and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Galster nor his counsel have any interest adverse to the Classes.

79. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Galster. Additionally, the damages suffered by individual members of the Classes will likely be small

CLASS ACTION COMPLAINT
-10-

relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Pre-recorded Stop Class)**

80. Plaintiff Galster repeats and realleges paragraphs 1 through 79 of this Complaint and incorporates them by reference.

81. Defendant made unwanted pre-recorded telephone calls to telephone numbers belonging to Plaintiff and the other members of the Pre-recorded Stop Call Class after being told to stop calling.

82. These telephone calls were made *en masse*.

83. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Galster individually and on behalf of the Class, prays for the following relief:

84. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Galster as the representative of the Class; and appointing his attorneys as Class Counsel;

85. An award of actual and/or statutory damages and costs;

86. An order declaring that Defendant's actions, as set out above, violate the TCPA;

87. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

88. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Galster requests a jury trial.

Respectfully submitted,

**JERAMY GALSTER**, individually and on behalf of those similarly situated individuals

DATED this 10th day of December, 2020.

By: /s/ *David Ratner*
David S. Ratner, Esq.
Ratner Molineaux, LLP
david@ratnermolineaux.com
1990 N. California Blvd,
Suite 20
Walnut Creek, CA 94596
Telephone: (925) 239-0899
Facsimile: (925) 891-3818
*Attorney for Plaintiff and the Class*

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (720) 213-0675

*Attorneys for Plaintiff and the putative Class*

**Pro Hac Vice motion forthcoming*